Thornton *v.* York Bank.

---

## THOMAS G. THORNTON *versus* YORK BANK & *als.*

The possession of one tenant in common of real estate is always presumed to be in maintenance of the right of all the tenants, if his acts will admit of that construction. And, if he enters upon the common property and takes the whole rents and profits, without paying over any share thereof to his co-tenants, such possession is not to be considered adverse, but in support of the common title.

But, if one tenant in common takes actual and exclusive possession of the entire estate, under a deed of the whole, duly acknowledged and recorded, from one who has no title, and receives the rents and profits, denying the right of any other person in the land, such possession is a disseizin of his co-tenants.

When such possession is apparently exclusive and adverse, the presumption of disseizin may be rebutted by other evidence showing that the rights of the co-tenants have been admitted or acknowledged.

The respondents to a petition for partition cannot avail themselves of the provision of the Revised Statutes of 1841, c. 145, (R. S. 1857, c. 104,) by which tenants may be allowed compensation for buildings and improvements made by them, or those under whom they claim.

If the respondents have no interest in the land, the petitioner is entitled to costs, though he recovers less than he claimed in his petition.

If there are several parcels embraced in the petition, and his share in some of them is less than he claims, if the respondents have no interest in those parcels in which he recovers less, the case is not within chapter 121, § 14, of R. S. of 1841, (R. S. 1857, c. 88, § 10,) and the petitioner is entitled to costs.

THIS was a PETITION FOR PARTITION of certain premises situated in Standish, lying between the Saco river and New river. George Scammon, under whom both parties claimed, owned the whole of the central portion, and one undivided half of the strips lying on either side. Scammon conveyed one third part of his interest therein to James B. Thornton, by his deed, dated Jan. 15, 1829; and Thornton conveyed the same to the petitioner, Jan. 17, 1831. By these conveyances, the petitioner acquired a title to one-third part of the central portion, and one-sixth part of the two strips. But in his petition he claimed one third part of the whole.

The respondents claimed, through mesne conveyances, under a deed from Scammon to Hobson and Came, dated Aug. 12, 1831. This deed purported to convey the entire estate; but the respondents actually acquired by it no interest in the strips. They did acquire whatever interest Scammon had remaining in the central portion. Under this deed, they took possession of the whole; and they claimed to hold it by disseizin. They contended, and, at the hearing before HOWARD, J., at the October term, 1855, they introduced evidence to prove that they had been in open, exclusive, adverse possession of the entire estate for more than twenty years before the filing of the petition. The petitioner introduced rebutting testimony; and the case was reported for the determination of the full Court.

*Fessenden & Butler*, argued for the respondents.

The respondents had such a possession as constituted a disseizin. It was not necessary that they should claim under a recorded title. *Ken. Proprietors* v. *Laboree*, 2 Greenl. 287. When such a defence is set up, the idea of a title, rightful in its origin, is excluded. *Jackson* v. *Newton*, 18 Johns. 356; *Sumner* v. *Stevens*, 6 Met. 337; *Melvin* v. *Proprietors of Locks, &c.*, 5 Met. 33.

The disseizin has not been purged by any entry of the petitioner with an express intention to take possession. *Young* v. *Withees*, 8 Dana, 165.

Negotiations for purchasing the interest of another are no recognition of a superior title in him. 18 Johns. 362, before cited.

Should the petitioner prevail, the respondents will be entitled to betterments. *Bracket* v. *Norcross*, 1 Greenl. 89; *Bacon* v. *Callender*, 6 Mass. 303.

In any event, the respondents will be entitled to costs, for the petitioner claims one-third of the whole premises, and his share in a portion is only one-sixth part. R. S. of 1841, c. 121, § 14.

*Swasey* argued for the petitioner.

Upon the point that there had been no disseizin, he cited *Colburn* v. *Mason*, 25 Maine, 434; *Barnard* v. *Pope*, 14 Mass. 438; *Fisher* v. *Dewerson*, 3 Met. 544; *Liscomb & ux.* v. *Root*, 8 Pick. 375; *Stetson* v. *Veazie*, 11 Maine, 408; *Tilton* v. *Hunter*, 24 Maine, 32; *Frye* v. *Gragg*, 35 Maine, 29; *Bates* v. *Norcross*, 14 Pick. 224; *Varney* v. *Stevens*, 22 Maine, 334; Co. Litt. vol. 1, b. 199; Cowp. 218; *Fairchild* v. *Shackleton*, 5 Burr. 2604.

The respondents are not entitled to betterments. *Liscomb* v. *Root*, 8 Pick. 376.

The opinion of the Court was drawn up by

TENNEY, C. J.—Both parties derive title from George Scammon, who received a deed from Joel Libbey, dated May 25, 1825, of certain real estate, which embraces the land in controversy. The petitioner's right is under the deed of Scammon to James B. Thornton, dated January 15, 1829, and is of one-third of one-half of a strip of land, eight rods in width on the Saco river, and of the strip of land four rods wide on the New river, and one-third of the residue of the premises, described in the petition, in common and undivided with others. The respondents claim under a deed from Scammon to Jabez Hobson and Abraham L. Came, dated August 12, 1831, through several mesne conveyances.

The defence is, that the respondents, and those under whom

they claim, have had open, notorious, exclusive and adverse possession of the whole land described in the petition, for more than twenty years prior to the date of the petition; and, if this defence should not prevail to its full extent, the respondents insist that they are entitled to be allowed a compensation, for the value of the buildings and improvements on the premises, made by them, and those under whom they claim.

" The possession or entry of one tenant in common, or joint tenant, is always presumed to be in maintenance of the right of all; and he shall not be presumed to intend a wrong to his companions, if his acts will admit of any other construction." Stearns on Real Actions, 41.

The occupation of the premises by Scammon, from the time of his conveyance to James B. Thornton till the date of his deed to Hobson and Came, is not in the least inconsistent with his possession, intended to be in conformity to his interest still remaining, and a full acknowledgment of the right which he had conveyed with covenants of warranty.

Scammon had no title to the portion of the estate which he had conveyed to James B. Thornton, and, consequently, his deed transmitted none of the same portion to Hobson and Came. But, if the latter took actual and exclusive possession of the entire estate, under the deed to them, taking the rents and profits to their own use, asserting their own exclusive property in the land, and denying the title of any other person, it was an adverse possession by them, and those claiming under them, and an ouster of the other tenants. Stearns on Real Actions, 41.

In *Prescott* v. *Nevers*, 4 Mason, 330, the defendant had a deed of the whole land, but his title extended only to an undivided fourth part, in common with other proprietors. He, however, made an actual entry into the whole, claiming the entire fee and right therein. It was held that his acts of ownership amounted to a disseizin of the co-tenants, for he entered as sole owner, and his possession was open and notoriously adverse to them. The Court say, " there can be

no legal doubt that one tenant in common may disseize another. The only difference between that, and the other cases is, that the acts which, if done by a stranger, would *per se* be a disseizin, are in the case of tenancies in common susceptible of explanation consistently with the real title. Acts of ownership are not in tenancies in common necessarily acts of disseizin. It depends upon the intent with which they are done."

If one tenant in common enter into the whole of an estate, under a deed duly acknowledged and recorded, from one who has no title, it is an actual disseizin of his companions. Stearns on Real Actions, 41. If a tenant in common enters on the common property, and takes the whole rents and profits, without paying over any share thereof to his co-tenants, his possession is not to be considered adverse to them, but in support of the common title. *Parker* v. *Prop'rs of Locks & Canals on Merrimack river,* 3 Met. 91. And it has been held, in England, that even a refusal to pay such shares, is not sufficient evidence of an ouster, without denying the title. *Fisher & al.* v. *Prosser,* Cowp. 217.

Whether the possession of Hobson and Came, after taking their deed from Scammon, constituted an ouster of the petitioner, is a question of fact to be determined by the evidence; and the presumption arising from the possession, if apparently exclusive, that the occupants claimed the whole estate, and denied the right of the tenant, may be rebutted by proof. And the issue before us is, " did they oust the petitioner ?"

The warrantee deed of Scammon to James B. Thornton, and that of the latter to the petitioner, were on record before Hobson and Came took the deed of Aug. 12, 1831. This was constructive notice to them of the title of the petitioner; and, hence, they are presumed to know that they could not hold adversely to him, without doing him a wrong, especially as both held under the same grantor. That Hobson and Came did not design to hold adversely to the petitioner, for a considerable time, at least, if at all, after they took their deed from Scammon, has some support from the omission on their

part to record the deed to them, dated Aug. 12, 1831, until May 6, 1835.

Moreover, it is in evidence, not contradicted, from Scammon, who was a competent witness under statute of 1855, c. 181, that, at the time of the conveyance to Hobson and Came, Scammon took back an obligation in writing, that they would convey one-third part of the premises owned by the petitioner, in the event that he would not confirm the sale as made to them; and Scammon was to repay to them $66,60, in case the reconveyance should be made. This obligation was a recognition of the petitioner's title, by the parties thereto. And the possession, which constructively passed by the delivery of the deed to Hobson and Came, cannot be regarded in fact adverse to the petitioner, but in conformity to the title which they actually acquired.

From the time that the deed was given to Hobson and Came, to the time when Hobson gave his deed to P. B. Abbott, the occupation of the premises was apparently the same as it long had been in connection with the saw-mill which was built by Hobson and Came, upon what is called the mill privilege, and which is no part of the land in dispute, for the accommodation of the owners of the mill and their customers, extending back to the year 1824, previous to the deed of Scammon to James B. Thornton. And this occupation had no characteristic indicative of an intention, on the part of Hobson and Came, to hold as against the petitioner an adverse, or even an exclusive possession, or to deny to him title in the premises.

While Abbott was in possession under his deed from Hobson, he is proved to have admitted, fully, that the petitioner had an interest in the land. This is evidence that he was holding the possession for his co-tenants, as well as for himself. It is true, that Abbott not only occupied a house which he built upon the premises, and other buildings, but that he enclosed a garden near his house with fence. But, when it is considered that the ground in question, not covered with buildings, was open to all, and used by those who had business

at the mill, the whole being covered with roads, according to the evidence, it cannot be treated as proof of an exclusive and adverse possession in him, who had freely admitted the petitioner's title, that he took effectual measures to protect his garden by a fence. The admission of the petitioner's title, and the fencing of the garden by Abbott, are perfectly consistent.

The petitioner, on Dec. 29, 1842, leased his right in the premises to Abijah Usher and Stephen B. Lane, for one year, a part of which right was underleased to P. B. Abbott, who occupied under the lease in 1843. The case discloses nothing tending to show that the lessees, or those claiming under them, were disturbed in their possession. This is certainly strong evidence that other tenants in common, under the title by deed, did not then design to claim adversely to the petitioner.

Upon a careful examination of the evidence, we are not satisfied that the respondents, and those under whom they claim, have held the premises so as to have acquired a title to the part conveyed to James B. Thornton, by an open, notorious, exclusive and adverse possession, for the term of more than twenty years.

It is very clear that the Legislature did not design that, in a petition for partition, the respondents can avail themselves of the provisions of the statute, by which a tenant may be allowed compensation for the value of buildings and improvements, made by them, or those under whom they claim. R. S. of 1841, c. 145, § § 22 to 31, inclusive. *Tilton* v. *Palmer,* 31 Maine, 486; *Liscom & ux.* v. *Root,* 8 Pick. 376.

> *Judgment for partition, according to the title herein decided as belonging to the petitioner.*

A question has been argued in relation to costs. The petitioner having title to one-sixth part only of the two strips, one on Saco river and one on New river, is entitled to less land in the division than he claims in his petition. But Scammon acquired, by his deed from Joel Libbey, only one undivided half in the strips, and in his deed to Hobson and

Came, he reserved to himself, as not conveyed by the deed, one undivided half of eight rods on Saco river, and the whole of four rods, together with all water privileges on New river. Hence, Hobson and Came obtained no title to any part of these strips, under Scammon's deed to them. And the respondents have no title by deed, excepting under that of Scammon to Hobson and Came. Therefore, the petitioner did not hold his sixth part in the strips *in common* with the respondents; and, their title under the alleged adverse possession of over twenty years having failed, they have not succeeded in holding any thing, to which he has not shown title, in the strips.

We think the case does not come within the provision of R. S. of 1841, c. 121, § 14, so as to entitle the respondents to costs; § 13, c. 121.　　　　　　　　*Costs for the petitioner.*

HATHAWAY, APPLETON, CUTTING, GOODENOW, and DAVIS, J. J., concurred.