MARIA J. BADER, *et al.,* v. AUGUSTUS L. DYER, *et al.,*
Appellants.

**Tenants in Common.** Where a deed is to a husband and wife, they hold as tenants in common, and not an estate by the entirety,
2 under Code, section 2923, which provides that conveyances to two or more in their own right create a tenancy in common.

ADVERSE POSSESSION. Where a tenant in common had sole possession of land for thirty years, using it as his own, and knowing the co-tenancy existed, but making no public claim of entire ownership,
3 his possession was not adverse, and limitations did not run against his co-tenants, who had no knowledge of the co-tenancy or that the husband was making adverse claim to the whole estate.

SAME: *Husband and wife.* Where land was conveyed to a husband
3 and wife, who occupied it together and jointly shared the profits, the husband's possession was not adverse to the wife's.

HARMLESS ERROR. An error in finding that a tenant in common had
4 conveyed his interest in land was not prejudicial, it being found that the interest was reconveyed to him.

**Deeds:** MISTAKE: *Evidence.* The fact that the husband paid most of the price is not conclusive that the wife's name was inserted in a deed as a grantee by mistake, especially where the wife contributed substantially, helped improve and where the husband had read, recorded and kept the deed, in silence."

**Appeal:** CORRECTION OF RECORD BELOW. An erroneous record cannot be first assailed on appeal.

*Appeal from Clinton District Court.*—Hon. P. B. WOLFE, Judge.

FRIDAY, DECEMBER 16, 1898.

ACTION in equity for the partition of real estate. There was a hearing on the merits, and a decree for the plaintiffs. The defendants appeal.—*Affirmed.*

*D. A. Wynkoop* for appellant Dyer.

*Murray & Farr* for appellant Anderson.

*Hayes & Schuyler* and *Thomas & Thomas* for appellees.

ROBINSON, J.—On the twenty-ninth day of May, 1855, John H. Armitage and Martha Armitage executed to Augustus L. Dyer and Elizabeth M. Dyer a warranty deed which purported to convey to the grantees a tract of 160 acres of land, in Clinton county, for the consideration of one thousand one hundred and twenty dollars. During the same year a small house was built upon the land, and the grantees, who were husband and wife, moved upon it, and made it their home until December, 1864, when the wife died intestate and without issue. The husband lived upon the land about twenty years after the death of his wife, and then moved to Maquoketa. He continued in possession of the land, however, until January, 1896, when he conveyed his interest therein to Jesse A. Anderson, and received a mortgage thereon for the purchase price, which he now holds. Three brothers and two sisters of Mrs. Dyer survived her, and the sisters and one brother are the plaintiffs. The defendants are the husband and his

grantee, Anderson, who was a brother of Mrs. Dyer. D. H. Anderson, who was the third brother, has executed a quitclaim deed for the land to Dyer, and is not made a party to the action. The plaintiffs claim that each of them is entitled to an undivided one-tenth of an undivided one-half of the land described; that Jesse A. Anderson and D. H. Anderson were entitled to like shares; and that Dyer was entitled to but an undivided three-fourths of the entire tract. The defendants allege that all the land was purchased and owned by Dyer, and that Mrs. Dyer's name was inserted in the deed therefor erroneously and by mistake, and that the mistake was not discovered until the conveyance to Jesse A. Anderson was made. Other defenses are also pleaded. The district court found and adjudged that each plaintiff was entitled to the share claimed, or to an undivided one-twentieth of the entire tract of land; that Jesse A. Anderson was the owner of the remainder; that the premises could not be divided equitably; and ordered a sale thereof, and that the defendants pay the costs of witnesses and reporter's fees.

I. Much evidence was submitted in regard to the property owned by Mr. and Mrs. Dyer, respectively, and as to the sources from which the money paid for the land in controversy was obtained. Their parents lived in Virginia. They were married there, and came to this state in the year 1853. The husband had some property which he had obtained from his father and by his labor, which he converted into money, and claims to have brought to this state about $400 in money and some other personal property. His wife also had a small amount of property, which she received from her father. She was a glove maker and tailoress, and made gloves and clothing for others, and derived considerable revenue from that source. In June, 1854, they purchased eighty acres of prairie land and ten acres of timber for one hundred and fifty dollars, and in October of the same year the eighty-acre tract was sold for five hundred and fifty dollars, and a contract for the land in controversy was made. The five hundred and fifty

dollars so received and three hundred and fifty dollars borrowed by Dyer constituted the first payment on the land, and he claims to have paid the remainder of the purchase price, and to have repaid the money borrowed from his share of his father's estate. He received from that source, in the year 1855, about one thousand dollars. Improvements were made upon the land to the value of about six thousand dollars. It is probable that the larger part of the purchase price of the land was paid from the resources of Dyer, but, if that be true, it does not follow that a mistake was made by inserting in the deed the name of the wife as one of the grantees. It is probable that she contributed a substantial amount to the purchase price and to the cost of the improvements, nearly all of which were made during her lifetime, and it was proper and commendable to give her an interest in the land. The Armitages resided in Indiana, and the land in question was purchased of them through their agent, named Beard, who resided near the Dyers, in Clinton county. The deed was executed in Indiana, acknowledged there before a justice of the peace, and sent to Beard, who delivered it to Dyer. When the deed was first received, Beard called Dyer's attention to the fact that a certificate showing the official character of the justice had not been attached, and the deed was returned to Indiana for a certificate of that character. The presumption is that Dyer read the deed when he received it, and knew that his wife was named as grantee. It was not, and is not, usual in conveying land to a husband to insert the name of his wife as a grantee unless that is required by the contract of purchase. It is true that Dyer testifies that he first learned of or was informed that the deed in question was drawn to himself and his wife jointly in January, 1896, but the claim is unreasonable. He could read and write. The deed was examined when it was received. He kept it in his possession for several weeks and then had it recorded. After it was recorded it was returned to him, and ever since has been in his possession. We are satisfied that

the deed was drawn as intended, and that he knew how it was drawn when he received it.

II.　It is claimed, if a mistake in the deed in question be not shown, that it created in Dyer and his wife an estate by the entirety, which passed to him on the death of his wife, according to the rule of the common law. But section 2923 of the Code provides that "conveyances to two or more in their own right create a tenancy in common, unless a contrary intent is expressed." That was the law of this state when the conveyance in question was made. Code 1851, section 1206. The effect of a conveyance to the husband and wife, under that provision as it appeared in the revision of 1860, was determined in the well-considered case of *Hoffman v. Stigers,* 28 Iowa, 302, and held to vest in them an estate in common, and with that decision we are content.

III.　It is next contended that Dyer held possession of the land in question from the time the deed was delivered to him until January, 1896, under a claim of absolute and exclusive ownership adverse to all others, and that the claims of the plaintiff are barred by the statute of limitations. It is also insisted that the plaintiffs have been so grossly negligent in asserting their claims that a court of equity should not give its aid to enforce them. It is well settled that the seizin and possession of one of several tenants in common are the seizin and possession of all. It was said in *Burns v. Byrne,* 45 Iowa, 285, "that the seizin and possession of one tenant in common are the seizin and possession of the others. One can never be disseized by another without actual ouster. By actual ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits. An actual ouster, and consequent adverse possession, might be inferred from sole possession, and an exclusive reception and enjoyment of the rents and profits, with the knowledge and implied acquiescence of the other tenant in common, for the period of ten years." The rule of that case has been followed frequently

in this state. See *Kinney v. Slattery*, 51 Iowa, 353; *Hume v. Long*, 53 Iowa, 299; *Killmer. v. Wuchner*, 74 Iowa, 359; *Moore v. Antill*, 53 Iowa, 612. There is not the slightest ground for claiming that the possession of Dyer during the lifetime of his wife was adverse to her nor that it was exclusive. So far as the facts are disclosed by the record, they occupied the premises together and jointly shared in its benefits. After the death of his wife, Dyer was in the sole possession of his farm until January, 1896. It does not appear that any of the plaintiffs had knowledge of the condition of the title until the farm was sold to Jesse A. Anderson. They were then asked to execute to Dyer quitclaim deeds in order to perfect his title. It thus appears that we have a case where one tenant in common had the sole use and possession of the subject of the tenancy, and knew that such tenancy existed, for more than thirty years, while his co-tenants had no knowledge of the tenancy nor of their rights. It is true that in many cases the statute of limitations will begin to run against the owner of real property, or of an interest therein, even though he may not have any actual knowledge of the adverse possession and claim of the person in whose favor the statute runs; but that rule does not apply to tenants in common who have no knowledge of and no reason to know that the tenant in possession is holding adversely to them under a claim of right. The evidence in this case shows that the plaintiffs knew, or must be charged with knowing, that Dyer, after the death of his wife, occupied and used the property as his own; and had he claimed title adverse to them, and had they known or had sufficient reason to know that fact, they would be barred by the statute of limitations from now recovering any interest in the land. But there is no evidence that he publicly or openly claimed the entire ownership of the land until the year 1896. It is not shown that he rented it and appropriated the rents after he moved to Maquoketa, but the claim and proof are that he continued in possession of it. Had he rented the land after he moved to Maquoketa, and appropriated the rents to his own use, a different question might have

been presented. *Moore v. Antill*, 53 Iowa, 612; *Burns v. Byrne*, 45 Iowa, 285.

But it is the rule that one tenant in common is not liable to his co-tenant "for mere use and occupation of the entire lands, without any agreement with the others to pay rent and without any demand from them for possession, or refusal to surrender possession, and without his having rent for such premises from a third person." *Reynolds v. Wilmeth*, 45 Iowa, 693. Since the possession held by Dyer was presumptively for his co-tenants as well as for himself, and not adverse to them, the burden is on him to show that it was adverse for the requisite length of time to give him title as against them, and that they knew, or had sufficient reason to know, the true character of his possession; but that he has failed to do. He has not shown any claim of ownership which was known to the plaintiffs, or which, in the exercise of ordinary care, they would have known, prior to January, 1896, inconsistent with his rights as a tenant in common in possession, and he has therefore failed to establish title in himself by virtue of adverse possession under a claim of entire ownership. Our conclusion finds support in the following authorities: *Lapeyre v. Paul*, 47 Mo. 590, in which it is said that, for the purpose of an ouster by a tenant in common, "there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them"; *Colman v. Clements*, 23 Cal. 245, in which it is said: "The possession of one tenant in common is presumed to be the possession of all, and, in order to rebut this presumption and make the possession adverse, it must be shown that the possession was with the intent to hold adversely, and such intent must be indicated by acts calculated to exclude the co-tenant." See, also, *Warfield v. Lindell*, 30 Mo. 281 (38 Mo. 561); *Dubois v. Campau*, 28 Mich. 304; *Thornton v. Bank*, 45 Me. 161; *Colburn v. Mason*, 25 Me. 435; *Parker v.*

*Proprietors,* 3 Metc. (Mass.) 91; *Mansfield v. McGinnis,* 86 Me. 118 (29 Atl. Rep. 956); *McClung v. Ross,* 5 Wheat. 116; 1 Am. & Eng. Enc. Law (2d Ed.) 801; 11 Am. & Eng. Enc. Law (1st Ed.) 1112.

IV.   The defendant Jesse A. Anderson has taken a separate appeal, and complains of the action of the district court in finding that his share and that of D. H. Anderson in the property in question had been conveyed to Dyer, and in finding that Jesse A. Anderson was represented by counsel.   The record shows that the defendant Anderson was represented in the district court by an attorney, and that the answer filed by him admitted that D. H. Anderson had conveyed his interest in the land to Dyer.   If the record is erroneous, it should have been corrected in the district court. It cannot be assailed here for the first time.   If the district court erred in finding that Jesse A. Anderson had conveyed his interest to Dyer, the error was without prejudice, as the court found that the interest was reconveyed to Jesse A. Anderson.   The pleadings showed that D. H. Anderson did not have any interest in the property.   If that was not true, Jesse A. Anderson cannot complain of the error.   The decree of the district court is sustained by the evidence, and appears to be correct.   It is therefore AFFIRMED.