ANNA MARIE SAGEN and RANDINA NELSON, v. GUDMAN GUD-
    MANSON, Appellant; PETER ANDREW NELSON, Appellee;
    MOLLIE NIKKOLINE NELSON, Appellee; RAGNILD GUDMAN-
    SON, Appellant, and N. B. NELSON, Appellee.

**Partition:** PRIOR SETTLEMENT: EVIDENCE. In this action to partition
estate lands the evidence is reviewed and held insufficient to show
that a family settlement either related to or affected the title to the
real property.

**Co-tenancy:** ADVERSE POSSESSION. The possession of one co-tenant will
be presumed to be for the benefit of all, in the absence of a contrary
statute; and will be regarded as the possession of all until by some
act or declaration the interests of the others are repudiated.

**Same.** To warrant the presumption of disseisin by a co-tenant the
adverse holding must be by some act, or series of acts, for such
length of time and under such circumstances as will indicate a
purpose to occupy the premises to the exclusion and denial of the
rights of the other co-tenants, who must have been aware of such
intent and have acquiesced therein.

**Same.** Entry and possession by one co-tenant inures to the benefit of
the others, not only as between themselves but as to strangers also.
In the instant case the evidence is held insufficient to show adverse
possession by one co-tenant.

**Same:** IMPROVEMENTS: ESTOPPEL. The making of improvements by a
co-tenant in possession without advising with the other tenants is
not necessarily inconsistent with occupancy as a co-tenant; and
failure of the other tenants to make objection to the improvements
will not as a matter of law estop them from asserting that they
were not made under an adverse claim.

**Same:** LACHES. Co-tenants may rely on the good faith of the one in
possession, and that his acts are not hostile to their interests: and
they will not be guilty of laches in so doing, which will bar their
rights in the property, unless the delay equals the period of limita-
tions.

Same: IMPROVEMENTS: COMPENSATION. It is only in exceptional cases that a co-tenant may voluntarily burden the property with improvements to the expense of the other tenants; and especially when the rents and profits were ample to meet such expenses

Same: RENTS AND PROFITS: ACCOUNTING. A co-tenant in possession, not having leased the premises or distinctly asserted ownership of the entire estate, cannot be required to account for rents and profits, but after ouster must account therefor.

*Appeal from Worth District Court.*—HON. J. J. CLARK, Judge.

TUESDAY, MARCH 17, 1914.

SUIT in partition, in which defendant Gudman Gudmanson asserted entire ownership, resulted in decree substantially as prayed. He appeals.—*Affirmed.*

*T. A. Kingland,* for appellant.

*Oliver Gordon* and *M. H. Kepler,* for appellees.

LADD, C. J.—Andreas Gudmanson died intestate March 5, 1886, leaving him surviving his widow, Ragnild Gudmanson, and two children, Gudman Gudmanson and Mollie Nelson. The latter has since deceased, May 10, 1895, leaving four children, Anna Maria Sagan and Randina Nelson, the plaintiffs, and Peter Andrew and Mollie Nikkoline Nelson, minor defendants, and her husband, N. B. Nelson. The deceased, Andreas Gudmanson, owned eighty acres of land at the time of his death, five acres of which has been sold since, and on February 26, 1896, his widow conveyed all her interest in the premises to Gudman Gudmanson. In this suit the plaintiffs allege the children of Mollie Nelson are entitled to one-eighth thereof each, and Gudman Gudmanson one-half, and pray for partition and an accounting of rents and profits. The defendant, Peter Andrew Nelson, being a minor, answered by guardian *ad litem*, in demanding the relief sought in the peti-

tion, as did Mollie Nikkoline Nelson, who attained her majority by marrying Myhre since the beginning of the action. N. B. Nelson filed a similar answer. Gudman Gudmanson, who for convenience may be designated the defendant, interposed the defenses that: (1) By an oral settlement March 16, 1887, of all the parties interested, he became owner of the premises in controversy; (2) had occupied them adversely ever since; (3) that plaintiffs and other answering defendants, having allowed him to make improvements without objection, are estopped from setting up any claim to the land; and (4) ought not to be permitted to do so because of laches.

Upon the death of Andreas Gudmanson, title passed *eo instante* to his widow and two children, Mollie Nelson and Gudman Gudmanson. The widow did not elect to take the forty acres upon which she lived as a homestead, so that each became owner of an undivided one-third thereof and tenants in common, and, unless Mollie Nelson was divested of her estate prior to her death, her share descended to her surviving husband and children, the former taking one-third thereof, or one-ninth of the entire estate, and the latter one-ninth thereof, or one-eighteenth of the entire estate each. Was Mollie Nelson or those entitled to take under her ever divested of the title?

I. Did defendant acquire the farm by virtue of a family settlement and a division of property in pursuance thereof? At the time of Andreas Gudmanson's death the forty acres on which he lived, and known in the record as the west forty, was incumbered for $200, and then worth about $16 per acre. He had bought eighty acres next to it for $1,000, on which $200 or $300 was paid. Of this he had borrowed $100 of Soly. This was repaid to Soly by the son, who also paid the funeral expenses and some other items of indebtedness. Subsequently one forty of this eighty acres was sold for $400, and the proceeds applied on the incumbrance on what is known as the east forty. According to defendant's testimony deceased left "about twenty head of cattle, two old horses, the household goods, no ma-

1. PARTITION: prior settlement: evidence.

chinery apart from an old binder.'' Defendant then lacked twenty-two days of being sixteen years old. His sister was older, and married Nelson in the fall of the same year, and lived with the widow and son about two years. On March 16, 1887, a division of the personal property was made, at which Knut Knutson was present, but he did not recollect what was said, though he prepared two notes of $105 each to the widow, one of which was signed by Gudmanson and the other by Nelson which were intended as receipts showing that each had received half of the cattle not retained by the widow. The widow testified that there was an agreement to divide the personal property so that the children would take equal parts.

Q. Well, how was the property divided at that time? A. There wasn't anything else to divide, only some things in the house and that outside, the cattle and such. My daughter Mary got nine head of cattle; they got some things from the house at this time and afterwards. Q. What did you get when the property was divided? A. I got two of the oldest cows and the team, and they were not divided because they thought they belonged to me. Q. Was there anything said about the land? A. No, not that I remember or heard anything about. Q. Did you ever divide the land? A. I did not divide it any other way, only I thought the 40 I was on was mine, and the other 40 they should have together, Mary and Gudman. Q. Upon what conditions, if any, should they have it? A. They agreed that they should have it together, and the one that could pay it should have it. Q. Well, who has paid for this land that was not paid at the time he died? A. It is we that have paid it, Gudman. Q. Has Nick Nelson or his wife while she lived ever paid anything on this land? A. No.

Other evidence confirms her testimony that the division of the personal property had no connection with what may have been said concerning the realty. The defendant testified that in 1888 he and Nelson worked the farm together, and that ''it was the understanding that we should work together and pay for it. We commenced the second year and worked

it on that plan.'' According to this witness, the only explana-. tion Nelson gave on moving away was that ''working the land didn't pay,'' though he had contributed $50 (Nelson says $100) toward a $100 payment on the mortgage on the east forty acres. Whether this was repaid him is in dispute, defendant saying that he did so by doing some breaking and furnishing him a cow (though unable to state how many acres were broken, or definitely the price of it, save about $3 per acre, or that of the cow) while defendant swore his mother-in-law gave him the cow, and that he worked for defendant in return for part of the breaking at least. Nelson denies that anything was ever said about the land at the time the personalty was divided; and, when he talked with defendant and his mother some time after his wife's death concerning the interest of his daughters in the land, neither of them claimed that defendant had acquired it under any agreement such as the widow testified to, nor did they deny the interest of said children in the land. It may be that there was such an understanding between Nelson and defendant as the latter testified, even though he was then but eighteen years of age, but the contention that Mrs. Nelson agreed that the one who paid for the east forty should have it we think is not established by the preponderance of the evidence. The widow asserted and Nelson denied, and the story of the latter seems the more consistent with the subsequent conduct of the parties and Knutson's failure to remember anything that was said about the land. The family settlement in no manner affected the title to the realty.

II. The defense of adverse possession is equally futile. The possession of one tenant in common is presumed to be for the benefit of all, and will, in the absence of statute to the contrary, be regarded as the possession of all

2. Co-TENANCY: adverse possession.

the cotenants until rendered adverse by some act or declaration by him repudiating their interest in the property. *Weare v. Van Meter*, 42 Iowa, 128; *Bader v. Dyer*, 106 Iowa, 715; 38 Cyc. 21. In other words,

there must have been an ouster of the cotenant in order to set the statute of limitations in motion. Nothing of an affirmative nature was done by either defendant or his mother to indicate any claim of either to the entire estate. If the latter thought she owned the west forty acres, the evidence fails to show that she asserted this to her daughter, heirs, or to the neighbors. If the neighbors knew all about it, as she testified, the record does not indicate that the cotenants were advised of this, or of facts that should, in the exercise of reasonable diligence, have led to its discovery. *Knowles v. Brown*, 69 Iowa, 11, and like decisions, then, are not in point. The same is true of any claim made by defendant. If there was a disseisin of the co-tenant, then this must be inferred from continuous possession from 1888, when Mrs. Nelson and husband moved from the land, until this suit was begun in 1909, a little more than twenty years, the appropriation of the rents and profits during that time and the erection on the premises of buildings of the value of about $1,500, and all this with the knowledge and without objection by the co-tenants.

Many decisions are to the effect that the disseisin of co-tenants may not be inferred from exclusive and silent possession alone of a tenant in common, however long continued and that this will not constitute *prima facie* evidence thereof. *Reed v. Bachman*, 61 W. Va. 452 (57 S. E. 769, 123 Am. St. Rep. 996) ; cases collected in note to *Joyce v. Dyer*, 109 Am. St. Rep. 620. Expressions to the contrary are to be found in several of the decisions of this state, but these do not seem to have been necessary to the conclusions reached. The question is not specifically presented, and as its determination is not essential in this case, we are inclined to pass it until fully argued, for in any event possession was not continued for such a length of time by Mrs. Gudmanson and defendant, nor under such circumstances, as that an ouster or disseisin should be inferred.

In *Flock v. Wyatt*, 49 Iowa, 466, exclusive possession for

seventeen years was held insufficient to warrant such an inference, and a like conclusion was reached in *Bader v. Dyer*, 106 Iowa, 715, where possession was continued thirty-two years, though without the knowledge of co-tenants. Twenty years was adjudged insufficient in *Iddings v. Cairns*, 2 Grant, Cas. (Pa.) 88, and twenty-seven years in *Warfield v. Lindell*, 30 Mo. 272 (77 Am. Dec. 614). But ouster was inferred from forty years possession in *Jackson v. Whitbeck*, 6 Cow. (N. Y.) 632 (16 Am. Dec. 454), and also in *Doe v. Prosser*, Cowp. 217, where there were thirty-six years of undisputed possession, Lord Mansfield saying: "In this case   .  .  .   no evidence whatsoever appears of any account demanded, or of any payment of rents and profits, or of any claim by the lessors of the plaintiff, or of any acknowledgment of a title in them or in those under whom they would now set up a right.  I am therefore clearly of opinion that an undisturbed and quiet possession for such a length of time is sufficient ground for a jury to presume an actual ouster."

In *Chambers v. Bedell*, 2 Watts & S. (Pa.) 225 (37 Am. Dec. 508), peaceable and exclusive enjoyment of land for fifty years was held to be sufficient to carry the issue as to ouster to the jury.  For other cases, see annotation to 109 Am. St. Rep. 620.  In North Carolina, from exclusive and peaceable possession for twenty years, ouster at the original taking is inferred and title by adverse possession upheld in analogy to the statute of limitations barring title.  *Dobbins v. Dobbins*, 141 N. C. 210 (53 S. E. 870, 10 L. R. A. (N. S.) 185, 115 Am. St. Rep. 682).

But there seems no sufficient ground for fixing an arbitrary limit, as is decided by the great weight of authority, and

3. Same.

the period essential necessarily depends on the circumstances of the particular case. *Joyce v. Dyer*, 189 Mass. 64 (75 N. E. 81, 109 Am. St. Rep. 603), and cases collected in note.

In order to warrant the presumption that there has been a disseisin of co-tenants, the taking of possession and holding

it against them must be by act, or series of acts, for such length of time as and under circumstances to indicate a purpose to occupy the premises to the exclusion and denial of the right of the co-tenants, and the latter must have been aware of this and have acquiesced therein. Men do not ordinarily sleep on their rights, and the fact of long possession under circumstances that their right would have been asserted long before gives rise to the presumption that actual proof of the original disseisin has been lost.

In determining whether this has happened, however, sight must not be lost of the relationship of the parties, that though they hold their estate by several and distinct titles, this is by unity of possession; for none of them can know

4. SAME.

their own severalty, and an entry or possession by one of the tenants inures to the benefit of his co-tenants, not only as it concerns themselves, but also as to strangers. *Dobbins v. Dobbins, supra.* An ouster or disseisin of a co-tenant in such a case is an act of aggression on the property of another, and for this reason is not too readily to be inferred. Reverting to the facts of this case, it will be recalled that the widow remained on the premises with defendant, then a minor of sixteen years. The daughter married shortly afterwards, remained on the premises for two years, when her husband seems to have discovered that both he and defendant could not thrive on an eighty-acre farm, and quite naturally they, rather than the mother and minor son, moved elsewhere. Such minority and the care of the mother furnishes a satisfactory explanation of the daughter interposing no objection to the occupancy prior to her death in December, 1895. See *Zunkel v. Colson,* 109 Iowa, 695. All of her children were then minors, and when Nelson asserted to defendant and his mother they had an interest in the land, neither disputed him. The improvements made by defendant were essential to the enjoyment of the use. Two of the children were not of age when suit was begun, and the others but twenty-two and twenty-four years of age, respectively. One of them had made her home

with defendant and his mother for ten years, and this in connection with their relationship furnishes some explanation of the hesitation and delay about asserting any right to their interest in the land in court. They should not be held to have been ousted from their inheritance. The defense of adverse possession was not established.

III. The improvements were made on defendant's own motion, and without consulting his co-tenants. As making them when enjoying the rents and profits derived from the estate was not necessarily inconsistent with his occupancy as a tenant in common, his co-tenants were not estopped by standing by and interposing no objection thereto. The most that can be said is that this was a circumstance to be given more or less weight in determining whether there was a disseisin.

5. SAME: improvements: estoppel.

IV. Claimants were not guilty of laches. They had the right to rely on the fidelity of their co-tenants until advised in some way of disloyalty to their interests, and no reason appears for applying this doctrine within the period of the statute of limitations. *Reed v. Bachman,* 61 W. Va. 452 (57 S. E. 769, 123 Am. St. Rep. 996).

6. SAME: laches.

V. Objection is made to the decree for that no allowance was made appellant for improvements. Only in exceptional cases is a tenant in common permitted to burden the title with expenses of this kind, and there is nothing in this case to bring it within the exception. *Frye v. Gullion,* 143 Iowa, 719; *Cooper v. Brown,* 143 Iowa, 482; *Ward v. Ward,* 40 W. Va. 611 (21 S. E. 746, 29 L. R. A. 449, 52 Am. St. Rep. 911), and exhaustive note. According to the evidence, the rents and profits derived by appellant from the use of the estate were ample to meet all such expenses besides paying taxes and discharging the incumbrances, and there was no error in not allowing for improvement. *Ruffners v. Lewis' Ex'rs,* 7 Leigh (Va.) 720 (30 Am. Dec. 513).

7. SAME: improvements: compensation.

Appellant was not required to account for rents and

profits prior to the beginning of the action, for he occupied the premises without leasing to others. *Reynolds v. Wilmeth,* 45 Iowa, 693; *Varnum v. Leek,* 65 Iowa, 751; *Belknap v. Belknap,* 77 Iowa, 71. In *German v. Heath,* 139 Iowa, 52, the tenant leased the estate to others, and for this reason was held to account. In answering appellant distinctly asserted ownership of the entire estate there by excluding his co-tenants from possession with him to which they were entitled, and from that time on, as this amounted to an ouster, he was liable to account. *Sears v. Sellew,* 28 Iowa, 501; *Noble v. McFarland,* 51 Ill. 226; *Dodge v. Davis,* 85 Iowa, 77. See cases collected in note to *Gage v. Gage,* 28 L. R. A. 832.

8. SAME: rents and profits: accounting.

We discover no error in the record, and the decree is— *Affirmed.*

DEEMER, GAYNOR, and WITHROW, JJ., concur.