ELLA MOSSESTAD, Appellee, v. ANDREW O. MOSSESTAD et al., Appellants.

TRUSTS: Resulting Trusts—Husband and Wife. A presumption of
1  resulting trust does not prevail from the fact that a husband pays for property with his own money, and causes the title to be taken in the name of his wife. On the contrary, a presumption of gift or advancement to the wife does prevail.

GAYNOR and SALINGER, JJ., dissent as to the effect of the evidence to overcome the presumption.

EVIDENCE: Parol as Affecting Writing—Engrafting Condition on
2  Deed. Parol evidence is inadmissible to engraft upon an absolute deed to a wife of premises paid for by the husband, a condition to the effect that the wife was to have absolute title only in case she survived the husband.

*Appeal from Winnebago District Court.*—M. F. EDWARDS, Judge.

APRIL 2, 1918.

SUIT in partition of real estate. The real contest is

over the ownership of the property. The defendant Andrew O. Mossestad, appellant herein, claimed to be the sole and absolute owner thereof. The trial court confirmed his share at one third, and he appeals.—*Affirmed.*

*Jensen & Jensen,* for appellants.

*Burt J. Thompson* and *Alan Loth,* for appellee.

EVANS, J.—I. Andrew O. Mossestad is the surviving husband of Mary O. Mossestad, deceased. The appellees are the heirs of said deceased. At the time of her decease, Mary O. Mossestad held the legal title to the real estate in controversy, being a house and lot in Lake Mills, Iowa. The defendant appellant pleaded and introduced evidence to prove that he purchased and paid for the property in question, and took the deed in the name of his wife. He contends, therefore, that she held the title in resulting trust for him. Each of the parties to this marriage had children by a former marriage. The heirs of the deceased wife are the parties contending herein with the surviving husband. While it is true, ordinarily, that the payment of the purchase price and the taking of title in the name of another raises a presumption of resulting trust in favor of the party paying the price, this presumption does not obtain in favor of a husband who pays the price and takes title in the name of his wife. In such a case, a presumption of gift or advancement arises, and the deed is presumed to carry to the wife the full legal and equitable ownership. In other words, it is presumed that the wife was intended to be a beneficiary, and not a trustee. This general proposition is not contested by the appellant. In order to avoid it, however, certain oral evidence was introduced, with a view of showing the real intent of the husband at the time of the transaction. Such evidence was that of the appellant himself, and was as follows:

1. TRUSTS: resulting trusts: husband and wife.

"Well, I was a little bit older than she was, and I was married before, you understand; and I was older, and I had been married before, and I had children grown up, and, of course, I did not like for my kids to come and take this property away from her, from my wife, or anything like that, you understand.   Q.   In case you died, yes.   Well, go on.   A.   Well, we was going on the same place, and, of course, I was a little bit older,—quite a little bit older,—eleven years older, and, of course, I had been married before, and, of course, I had grown-up kids, and if anything happened to me, I would like her to have—I would like her to have a home, in case anything happened to me—if I died or anything."

The argument at this point is that the real intention of the husband fixes the presumption which shall govern the case, and that it was competent to show such intention by the direct oral evidence of the husband himself.   Without conceding the argument, and accepting as true the foregoing evidence, such as it is, can it be said that it shows an intention on the part of the husband at the time of such conveyance to his wife to make her a mere trustee?   To put it in another way, does it show an intention on the part of the husband not to confer a beneficial right or interest in the property upon the wife?   We think such evidence is clearly insufficient to that end.   On the contrary, the only fair inference that can be drawn from it is that the intention of the husband was to benefit his wife and to protect her in the future against any possible assertion of right in the property by his heirs against her in the event of his death.   Such is the fair purport of his evidence.   If, as contended, she held the legal title merely in resulting trust for her husband, then it could afford her no protection whatever against his heirs after his death.   The only way that the deed could operate to her protection would be to give it its full legal effect, and to presume that it carried not only the

legal title, but absolute ownership as well. The declared intention of the appellant to protect his wife is wholly consistent with this legal presumption. It is inconsistent with a claim of resulting trust. This evidence shows that the husband intended his wife to be a beneficiary. If she was a beneficiary, she was not a trustee. The fact that the wife died before the husband did not affect the nature of her title. If she held in resulting trust at all, she so held from the beginning. If she so held, then she had no beneficial interest at any time. If the husband may now establish a resulting trust, he could have done so during the lifetime of his wife. His right, if any, to do so has always existed since the deed was taken, and has become neither greater nor less by the intervening death of his wife. We think, therefore, that the trial court properly held that the deceased was the absolute owner of the property, and properly awarded partition accordingly.

II. It is contended, also, that the husband intended his wife to be a qualified beneficiary of the deed. The qualification thus engrafted upon the deed is that she was to be come the beneficiary therein only in the event that she survived her husband. There is nothing in the terms of the deed to warrant such qualification. If the terms of the deed could be qualified by oral evidence to that effect, even that is wanting. We do not think that the terms of the deed could be thus qualified by oral evidence if it were offered. If there was a resulting trust, the appellant was, from the beginning, the equitable owner of the property. If he was not such from the beginning, then the wife was the absolute owner thereof. There is no warrant, in our judgment, either in the evidence or in legal presumption, for saying that the wife held a qualified title.

2. EVIDENCE: parol as affecting writing: engrafting condition on deed.

The decree entered below is—*Affirmed.*

PRESTON, C. J., LADD, WEAVER, and STEVENS, JJ., concur.

SALINGER, J. (dissenting).    When a husband pays for
property, and places the title in his wife, there is a pre-
sumption which operates as evidence that it was his inten-
tion to make a gift, advancement, or natural provision,
rather than to create a trust.    Appellant concedes this, and
avoids with the claim that he has rebutted this presump-
tion.    Appellee replies that he must sustain this rebuttal
with the same degree of proof that is required to establish
a trust.

One who seeks to impress a trust upon a deed purport-
ing to be one of absolute conveyance in fee simple must es-
tablish such trust by clear and satisfactory evidence.    I
will not stop, at this time, to inquire just what satisfies this
requirement when it is sought to establish a trust,' because
there should first be considered whether such requirement,
whatever it be, applies to rebutting said presumption of gift,
etc.    There must, of necessity, be a time at which the one
who asserts a trust stands before the court, attempting to
establish the trust, without yet having shown anything
from which a trust is usually implied.    So long as he re-
mains in that position, his claim is under suspicion and all
his evidence is closely scrutinized.    The court is watchful to
protect the legal title.    But does he stand in such position
after he has clearly established facts from which, if there
were no more, the chancellor must declare there is a trust?
If, after the claimant has clearly shown, *prima facie,* he
has the equitable and beneficial title (and has, therefore,
*prima facie,* destroyed the apparent legal title), his case is
still viewed as it was before, then the court is now vigilant
to aid in the destruction of the beneficial and equitable title,
instead of the protection of the legal title.    If proving pay-
ment of the consideration proves the fundamentals of the
trust asserted, and the fact that the one who paid was a hus-
band raises a presumption of gift or advancement, the judi-
cial attitude inspired by desire to sustain the deed as written

must be abandoned, because both sides have shown that the deed is not to stand as written. One shows this by proof of who paid the price; the other, by evidence claiming that the apparently absolute deed was a gift, or advancement.

Whosoever shows that his money paid for property, and that the legal title was placed in another, has established that he is the true owner. In 3 Pomeroy on Equity Jurisprudence (3d Ed.), Section 1037, it is said that, "in pursuance of the ancient equitable principle that the beneficial estate follows consideration and attaches to the party from whom the consideration comes," the holder of the legal title becomes a trustee. And we held, in the case of *In re Estate of Mahin*, 161 Iowa 459, at 464, bottom, that the foundation of a resulting trust is the payment of the consideration or purchase price, and that a trust in the property purchased arises therefrom by operation of law. The authorities all agree that there is the said presumption of gift, etc., and that it is but a mere presumption, which may be rebutted, or, on the other hand, fortified. That the presumption, so-called, that the deed is a gift or advancement is evidence against the evidence of a trust is true, but the treatment of that counter-evidence is not settled because it is true. Suppose one who asserts the trust proved merely that he had paid the purchase price, and closed before there was any evidence that he sustained to the alleged trustee the relation of husband, or other relation within the rule that raises the so-called presumption of gift or advancement. If there were no counter-evidence, the trust would stand established. Suppose the defense then called a witness whose testimony was equivalent to saying that the claimant intended, by putting the legal title where he did, to make a mere advancement. Such testimony is the exact equivalent of what the presumption of advancement does. Now, when the claimant meets this witness, must he overcome him with the same degree of proof that is required to estab-

lish the facts which are the essential foundation of a trust? If so, should he deny marriage, he must make good his denial by more than a mere preponderance; must so meet what is a mere emergent or incidental issue. This inquiry cannot be affected by the fact that, in the case before us, the claimant showed the relationship from which such intent may *prima facie* be inferred. No matter who puts in the evidence of intent, it goes to an avoidance of a trust that would otherwise be held to be established. Therefore, I am of opinion that, when it once appears, clearly and satisfactorily, that a trust exists, meeting the avoidance does not require the same degree of proof that is required before the court has satisfactory evidence that there is a trust. In other words, when the claimant has once clearly proven that he paid the consideration, and it is claimed, that, notwithstanding, no trust should be decreed, the claimant may overcome the testimony in avoidance more easily than he can establish the essentials of the trust itself.

In the present case, it is most clearly established that appellant paid the consideration. Indeed, I do not understand that this is challenged. Wherefore, appellee makes the case turn on whether the evidence, as a whole, avoids the effect of proved payment of consideration by appellant, which, without such avoidance, operates to establish an equitable title. At this point, we are less concerned with what is due the legal, as with what is due the beneficial, title.

The testimony to meet the avoidance was this:

"Well, I was a little bit older than she was, and I was married before, you understand; and I was older, and I had been married before, and I had children grown up, and, of course, I did not like for my kids to come and take this property away from her, from my wife, or anything like that, you understand. Q. In case you died, yes. Well, go on. A. Well, we was going on the same place, and, of

course, I was a little bit older,—quite a little bit older,—eleven years older, and, of course, I had been married before, and, of course, I had grown-up kids—and if anything happened to me, I would like her to have—I would like her to have a home, in case anything happened to me—if I died or anything."

In considering this, we should keep in mind, too, that it is the language of one whom the record shows not to be familiar with the use of English. We should further consider that appellant paid the taxes, moved into the property soon after it was bought, lived therein for years, and still does; that the grantee is not shown ever to have lived in it, or to have claimed it as a homestead. Nothing contradicts the testimony nor the claim of appellant except said presumption. Speaking now to these conditions only, I think that all of the evidence, reasonably construed, sufficiently shows that appellant had the deed run to his wife so that, if she survived him, his children by the former marriage could assert no claim upon the property as against his wife, and that the beneficial title was to be his if, by reason of her dying before him, the contingency for which the deed was made could not arise. I am not denying that two constructions are possible. But one of them seems to me to be more reasonable, and that is that his wife was to have the property as long as she lived, and that he who had paid for it should have it when she ceased to be his wife and no longer needed it. As worked out by the majority, the husband paid for property and then made deed, with intention that his own children should never have the property, but that the children of his wife should have two thirds, and he one third of it. I think he intended that no one should disturb the wife while both lived; that, if she became his widow, she should become full owner, because of her additional dependency; and if he outlived her, the deed should cease to be operative; that, after she was dead, and no

longer his wife, the "kids" could not "take this property from her."

As to the argument that there can be no halfway house in a constructive trust,—that the *cestui* owns all the time or not at all,—the greater includes the less. If there may be a trust which can be asserted at any time, there can be one in which such time depends upon conditions. I cannot see how it matters that one who is a *cestui* agrees to postpone the using of his rights. I would reverse.

GAYNOR, J., concurs in the dissent.