Maggie Mangan et al., Appellees, v. Mary Bradac et al., Appellants.

**TRUSTS:** Overcoming Presumption of Resulting Trust. The presumption of a resulting trust which arises from the fact that the purchaser of realty pays the purchase price, and causes the deed to be taken in the name of a brother, is wholly overcome by a further showing, by oral testimony, that the grantee was impecunious, and that the purchaser, in causing the deed to be so taken, intended thereby to make financial provision for his brother, in case the latter survived the purchaser.

**ADVERSE POSSESSION:** Cotenants. One cotenant may not be said to hold adversely to other cotenants, in the absence of an ouster.

*Appeal from Wapello District Court.*—Seneca Cornell, Judge.

NOVEMBER 1, 1920.

REHEARING DENIED JANUARY 20, 1921.

SUIT in equity to establish a resulting trust in land. Plaintiffs claim the land in controversy, as residuary devisees in the will of Lawrence Guggerty, their father. Defendants are the children of the brother of Lawrence Guggerty and Patrick Guggerty, and claim a one-half interest in the land. Plaintiffs' claim is that Patrick Guggerty held title to this land upon a resulting trust, arising from the payment of the purchase price by Lawrence Guggerty, ancestor of plaintiffs, when the conveyance was made to Patrick Guggerty on March 1, 1870, and adverse possession by Lawrence Guggerty. Defendants introduced no evidence on the trial. It is contended by defendants that the evidence submitted by plaintiffs does not establish that Patrick Guggerty held the real estate in trust for Lawrence Guggerty. Defendants appeal.—*Reversed and remanded.*

*Gilmore & Moon* and *John W. Lewis,* for appellants.

*J. J. Smith,* for appellees.

ARTHUR, J.—A consideration of the questions involved makes it necessary that we first determine the facts.

Lawrence Guggerty was married in 1862. When he was married, he owned a farm of 80 acres in Wapello County, near the town of Chillicothe, on which he made a home and reared his children, and where he lived throughout his life. He was engaged in railroad contracting,—building railroads,—at the time of his marriage, and continued in that business for about 15 years. As this railroad business yielded him money, he invested it in lands, and, at the time of his death, in 1914, he owned over 1,400 acres of land in Wapello County. Immediately after his marriage, his brother, Patrick Guggerty, came to live with him, and continued to make his home with Lawrence until his death, which occurred on April 21, 1903. Patrick Guggerty simply lived in the family of Lawrence Guggerty, as a member of the family,

1. TRUSTS: overcoming presumption of resulting trust.

without wages, and did not work for any outside parties. Lawrence Guggerty furnished him with such meager funds as he needed; gave him money, the same as he did his children. It seems that Patrick lived at ease in his brother's home. In March, 1870, Lawrence negotiated for the purchase of 80 acres of land, adjoining his farm, from one Hughes, and the land was purchased, and Lawrence caused the conveyance of the land to be made to his brother, Patrick Guggerty. The legal title to the land was in Patrick Guggerty at the time of his death, April 21, 1903. The land was never separately fenced, but was inclosed with the farm of Lawrence Guggerty, and was used by Lawrence Guggerty as pasture land. Lawrence Guggerty always exercised full control over the land, and paid the taxes. After the death of Lawrence Guggerty, the plaintiffs occupied and used the land.

The defendants introduced no evidence at the trial, but say that this cannot count against them. They advert to language of this court:

"They can be expected to do little else than insist upon due proof of what plaintiffs aver." *Watson v. Richardson,* 110 Iowa 673.

Defendants challenge the sufficiency of the evidence introduced by plaintiffs to establish that, when the 80 was bought, the purchase price was paid by Lawrence Guggerty; and they say that plaintiffs must establish that such purchase price was actually paid by Lawrence Guggerty, by evidence that is clear and satisfactory.

We have examined the record of the evidence bearing upon the purchase of the 80, and as to who furnished the purchase price, and we believe that the requirement of the rule suggested by defendants' counsel is fully met by plaintiffs' evidence.

Lawrence Guggerty and his wife, Bridget, immediately upon their marriage in 1862, settled on the 80-acre farm that Lawrence Guggerty had bought before their marriage, and Patrick Guggerty came to live with them, and lived in their home until his death, in 1903. The housewife, Bridget Guggerty, had Patrick Guggerty in her family 8 years before the 80 in controversy was purchased, and 33 years afterwards. Bridget Guggerty, as a witness, when inquired of if Patrick Guggerty had

any property or money when she and Lawrence were married and Patrick came to live with them, answered, "No." Her answer may be in the nature of a conclusion. Perhaps it would have been more satisfactory if she had been further interrogated by counsel for plaintiffs, and direct answers brought out to facts. She was not cross-examined. Her knowledge as to the financial condition of Patrick was not tested as it might have been by searching inquiry. We are inclined to think, even though her answer was rather in the form of a conclusion, that, when this good housewife, in whose home Patrick had constantly lived 8 years before the 80 in controversy was bought and 33 years afterwards, said that Patrick had nothing when he came to live with them, and never had anything afterwards, her answer was quite convincing. It seems that Patrick was not engaged in any business enterprise. He just lived in his brother's family. Lawrence Guggerty was thrifty; he was a money maker. When he married, he had the 80 that they settled on. He kept adding to it, until he accumulated more than 1,400 acres of land. Patrick was without ambition. He lived in ease at his brother's home. Lawrence negotiated for the purchase of the 80 in controversy, Bridget's brother assisting him. When Lawrence and his brother-in-law went to town to complete the purchase of the land, Patrick remained at home. He had nothing to do with the transaction. Neither Bridget nor any other witness testifies to seeing Lawrence Guggerty pay to Hughes the purchase price. The purchase price evidently was paid. Lawrence made money out of his railroad contracts all along, and kept investing it in land. He had money to buy land. He had money to buy this 80, evidently. Patrick did not have any money. The conclusion is inevitable that Lawrence paid for the land.

Martin O'Hara, a farm hand, lived in the home three years, and afterwards visited there; and he testifies that he never heard Patrick or anyone else about the place mention this 80 as belonging to Patrick. He never heard Patrick make claim to having any interest in it.

John Guggerty was but a small boy, when the land was bought; but he stayed at home and worked on the farm about 30 years, and he never heard his uncle Patrick claim to own the 80.

Bart Guggerty, the son of Lawrence, lived at home, except about three years, and he did not hear his uncle Patrick make any claim to the 80.

If the record closed here, we would conclude that a resulting trust was established. But we have the further testimony of Ellen Riley and Agnes Guggerty to consider. These two daughters of Lawrence Guggerty, deceased, who are also plaintiffs in this action, qualified as witnesses by testifying that they took no part in the conversations between their father and their uncle, Patrick Guggerty, which they narrated, and besides, they are witnesses for plaintiffs. Ellen Riley testified:

"I overheard a conversation between my Uncle Patrick and my father. I took no part in the conversation. It was: My uncle never saved any money, never made any, and my father, he bought the land and put it in my uncle's name. He bought the land with his own money; paid the money for it. In case my father should die before he did, he would have something to live on. That was the conversation. The substance of the conversation between my father and Patrick was: My father bought the land, and put the title in Uncle Pat's name for his, in case my father died first, for him to have to take care of him. In the event that my uncle Patrick died first, then the land was my father's. At that particular conversation, he said just those words, that he bought the land for him. He always told them that he bought the land for him. It was to be his as long as he lived. In case he died first, it was to revert to my father. It was my father's land. It was to be his. My father said he had bought and paid for the property, and put the title in Uncle Pat's name, for him to have in case my father died first, because Uncle Pat had nothing to live on. My father said he had bought and paid for the property and put the title in Uncle Patrick's name, for him to have in case my father died first, because Uncle Pat had nothing to live on."

Agnes Guggerty testified:

"I remember overhearing a conversation between my father and my Uncle Patrick, in which I took no part whatever, relative to this Hughes land. It was three or four years before my uncle died. Took place in the living room. Those present were my father, my uncle, and myself. My uncle claimed that he

didn't own any land or money, and my father says: 'Well, I bought this land for you with my money, to have in case that I would die before you;' but in case that he would die before my father, of course it was my father's land, because he said that he bought the land for him, for my uncle.''

If a clause had been written into the deed to Patrick Guggerty expressive of the conversations testified to by the daughters, it would probably have made out an express trust, and would now be valuable to plaintiffs. But the testimony of these two daughters negatives, and in fact destroys, the very essence of a resulting trust, and establishes that Patrick Guggerty was the absolute owner of the 80 in controversy. .

The opinion of this court in a recent case, *Mossestad v. Mossestad,* 183 Iowa 311, is illuminating on this question, and directly in point. In the *Mossestad* case, the plaintiff sought to establish a resulting trust in himself, and, as a witness for himself, gave testimony, in substance and effect, very similar to the testimony of Ellen Riley and Agnes Guggerty in this case. Speaking of Mossestad's testimony, the court said:

''We think such evidence is clearly insufficient to that end. On the contrary, the only fair inference that can be drawn from it is that the intention of the husband. was to benefit his wife, and to protect her in the future against any possible assertion of right in the property by his heirs against her, in the event of his death. Such is the fair purport of his evidence. If, as contended, she held the legal title merely in resulting trust for her husband, then it could afford her no protection whatever against his heirs after his death. The only way that the deed could operate to her protection would be to give it its full legal effect, and to presume that it carried, not only the legal title, but absolute ownership as well. The declared intention of the appellant to protect his wife is wholly consistent with this legal presumption. It is inconsistent with a claim of resulting trust. This evidence shows that the husband intended his wife to be a beneficiary. If she was a beneficiary, she was not a trustee. The fact that the wife died before the husband did not affect the nature of her title. If she held in resulting trust at all, she so held from the beginning. If she so held, then she had no beneficial interest at any time. If the husband may now estab-

lish a resulting trust, he could have done so during the lifetime of his wife. His right, if any, to do so has always existed since the deed was taken, and has become neither greater nor less by the intervening death of his wife.''

There is no adverse possession by plaintiffs' ancestor and plaintiffs of the land. Since the death of Patrick Guggerty, Lawrence Guggerty and his children, plaintiffs, and the defendants, who are heirs of Patrick Guggerty, deceased, have been tenants in common of the land. After the death of Patrick Guggerty, in 1903, there was nothing to make an ouster of these appellants, who were cotenants; there was no change in the use of the land; no improvements were placed on it; and it was not fenced off by itself. No claim of right or entire ownership was made by appellees, until the commencement of this action. *Sagen v. Gudmanson,* 164 Iowa 440; *Flock v. Wyatt,* 49 Iowa 466; *Killmer v. Wuchner,* 74 Iowa 359; *Bader v. Dyer,* 106 Iowa 715.

2. ADVERSE POSSESSION: co-tenants.

Accordingly, the decree entered by the lower court is reversed. The cause is remanded for order or decree in harmony with this opinion.—*Reversed and remanded.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.