NEWTON SCHOONMAKER, Appellee, v. NELSON SCHOON-MAKER and MARY SCHOONMAKER, Appellants, and JANE A. KENNEDY and others, Appellees.

**Cotenants:** ADVERSE POSSESSION: OUSTER: EVIDENCE. One tenant in common may oust his cotenants, and by a hostile possession under claim of right maintained for a sufficient length of time acquire the entire title; and the ouster may be constructive as well as actual. But an ouster and hostile title will not be found and upheld upon doubtful or equivocal evidence; especially where the cotenants are members of the same family. In this action the evidence is held insufficient to show ouster of his cotenants by a father, who had acquired an interest along with his children in the property of his deceased wife, so as to entitle him to the entire property to the exclusion of the interests of the children.

**Same.** It is the duty of a cotenant in possession to pay taxes, and such payment is of slight significance on the question of ouster.

**Same:** BURDEN OF PROOF. A cotenant claiming title to the entire tract by adverse possession has the burden of establishing ouster by clear and persuasive evidence.

**Partition:** ATTORNEY FEES. In contested partition suits, attorneys' fees are not taxable in favor of plaintiff's attorney.

*Appeal from Winneshiek District Court.*—HON. A. N. HOBSON, Judge.

FRIDAY, DECEMBER 15, 1911.

THE opinion sufficiently states the nature of the case and the material facts.—*Affirmed.*

*William S. Hart,* for appellants.

*E. R. Acres,* for appellees.

WEAVER, J.—In the year 1873 the forty-acre tract of land now in controversy was conveyed to Susan Katherine Schoonmaker, wife of the defendant, Nelson Schoonmaker. In 1876, while still seised of this land, Mrs. Schoonmaker died intestate, survived by her husband and five children, all of whom as we understand the record were then infants. Thereafter one of these children died, leaving her father, Nelson Schoonmaker, her only heir. Plaintiff, who is one of the sons of Susan Katherine Schoonmaker, claims a share in said forty-acre tract as one of the heirs of his mother; and brings this action to have same partitioned. His father and the other heirs of his mother are made defendants. The father alone resisted the plaintiff's demand. His answer denies that plaintiff has any title or interest in the land, and pleads title in himself by adverse possession. He also alleges that, although the legal title to the land was in his wife at the time of her death, she held it as trustee only, and for the use and benefit of the plaintiff. Testimony being taken upon the issues joined, the trial court found the plaintiff entitled to the relief demanded, and decree of partition was entered accordingly. The defendant, Nelson Schoonmaker, appeals.

The claim of the defendant is, and he so testifies, that soon after his marriage to Susan Katherine in an Eastern state his father-in-law told him to go West, and when he had bought and paid for forty acres he, the father-in-law, would buy him another, and thereupon he came to Iowa, and obtained forty acres of land, and, having paid for it, his wife's father bought the adjoining forty acres, the one now in dispute, and caused it to be deeded to Susan Katherine. The two tracts have since been occupied and used

by him as a single farm, the dwelling house being on the original forty acres, and some of the other buildings are just across the line on the land to which the wife held the title. Some time after the death of Susan Katherine, Nelson Schoonmaker married again, and has at all times made his home on the eighty-acre farm. He has paid taxes thereon in his own name, and, except as hereinafter stated, has paid no rent. As a witness he asserts that he has always claimed to be the rightful owner of the forty acres in suit, and that he has at all times maintained adverse possession thereof against his children and against all persons whomsoever.

The claim of an equitable title by virtue of an alleged agreement between appellant and his wife's father is not strenuously insisted upon by counsel. Indeed, the showing made in support thereof falls far short of the conclusive showing which the law demands before the court will be justified in ingrafting a trust upon an unqualified conveyance of title. It might perhaps serve as a basis of claim of right under which adverse possession sufficiently long maintained would serve to defeat the legal effect of the conveyance. It must be said, however, that a careful search of the record fails to reveal any instance or place where the appellant asserted to or in the presence of any other person any right to this land, expressly based upon the agreement made with his father-in-law, and the claim appears in the record for the first time in an amendment to his answer filed after much of the evidence had been taken upon the issues as originally joined.

We must therefore proceed to the consideration of the claim of adverse possession on the assumption that under the laws of this state the husband and children of Susan Katherine Schoonmaker became at her death tenants in common of the land.

It may be conceded, as appellant claims, that one tenant in common may oust his cotenants, and by hostile pos-

session under claim of right sufficiently long maintained may acquire the entire title. It is also true 1. COTENANTS: adverse possession: ouster: evidence. that the ouster may be constructive as well as actual. It is equally true that courts are slow to find such an ouster or to uphold the acquisition of a hostile title by mere possession upon a doubtful or equivocal showing of facts. This is especially true where the tenants in common are members of the same family.

One can scarcely conceive of circumstances under which a husband can by adverse possession obtain title to the land of his wife with whom he maintains family relations. The same may be said as between parent and infant child. In this case appellant and his infant children were owners in common of the land. They lived upon it, we may assume, as the place of their common home until the children developed into maturity, and went out to make their several ways in the world after the manner of sons and daughters in general. If they left their father in sole possession, it was not an unnatural or unusual thing. He owned at least a third interest in the land, and could rightfully remain there. He was their father, and, if they were influenced by ordinary considerations of filial regard and respect, they could well consent, expressly or tacitly, to forego their right to demand partition until some future day, and this they could do without forfeiting their rights, unless their father should in some clear and unequivocal manner repudiate their right to a share of the property, and maintain exclusive and hostile possession in himself for at least ten years.

Here we think the appellant has signally failed. While he does, when brought to the point by forceful leading inquiries, say, in substance, "I claimed the land was mine, I claimed it all," and words to that effect, it is very evident, when we read all his testimony, that in this matter he gives utterance to his conclusion rather than to

statements of specific facts. Indeed, the record fairly indicates that while retaining possession of the land and enjoying its use during all these years, the thought of asserting title thereto against his children did not possess his mind until a comparatively recent date. When one of his daughters died in the year 1896, he took out administration on her estate, and listed as property of her estate the one-fifth of two-thirds of the land in suit, which would be the share she had inherited from her mother. In 1882 he secured a creditor by mortgage covering the forty acres which he held in his own name and the undivided one-third of the land of which his wife died seised. After the plaintiff arrived at his majority, and being in New York, he wrote to his father, asking him for rent on his share of the land, and appellant sent him the money. So far as appears he is on good terms with all the children of his first marriage, but he is unable to say that he ever addressed a word to any of them, excepting plaintiff, to the effect that he denied their rights in the land or asserted to them any claim of entire title in himself. Plaintiff appears to have been the only one of the children inclined to force a settlement with the appellant, and did at intervals of some years continue to agitate the matter. On one or more occasions he asked his father for rent, and the latter responded in effect: "I won't pay rent. If you have any land here, come and take it." This seems to be the nearest he ever came to an express claim of right or title and this language is equally consistent with the thought that he was not willing to pay rent, and, if the other tenants in common wanted to assert their rights, they could get them by partition, or by taking the possession to which they had a right under the law. It is true that many of the incidents to which we have referred took place more than ten years before this action was brought, and a title by adverse possession might still have arisen during the interval if there was any evidence to uphold such claim, but they are

still of significant value as indicating the character of possession which he assumed after his wife's death, and, in the absence of any sufficient showing to the contrary, it may be inferred if not presumed that the nature of that possession continued unchanged until this action was brought, and he set up a claim of title in himself.

Of the soundness of the general propositions of law advanced by counsel there can be little doubt but the evidence on which the defense relies does not reach up to the standard set by the authorities cited in the brief. The case of *Bader v. Dyer,* decided by this court and reported in 106 Iowa, 715, has many points of similarity with the case at bar, and involves much the same questions of law. There the wife died seised of land, and the husband surviving remained in possession, having the entire use and control of the property for a period of thirty-two years and undertook to convey it to a third person when the collateral heirs of the wife brought suit for partition. As in this case, the husband claimed he had in fact always been the beneficial owner, and claimed that his title had become absolute by adverse possession. In holding that no title had been acquired by the husband as against his cotenants, we stated the rule to be that "the possession of one tenant in common is presumed to be the possession of all, and, in order to make the possession adverse, it must be shown that the possession was with the intent to hold adversely, and such intent must be shown by acts calculated to exclude the cotenant." Upon this fundamental proposition, appellant fails to make a case. No act of his is shown during the period of his occupancy which tends to rebut the presumption that his possession remained that of a tenant in common. He never assumed to convey or mortgage anything more than his conceded share in the undivided estate. So far as appears, he never rented it or took or received other benefits from the property than such as a tenant in common could lawfully take and enjoy. As

said in the *Bader* case, "there is no evidence that he publicly or openly claimed the entire ownership of the land," until this action was begun. The nearest he ever came to making such a claim was his refusal to pay rent, and his statement to plaintiff that if he had any land there to come and take it, a declaration which as we have already suggested falls very much short of an explicit unequivocal denial of the tenancy in common.

That he paid the taxes is of no significance for as tenant in possession taking the whole use and benefit of the land from year to year it was his duty to pay them. *McMahill v. Torrence,* 163 Ill. 277 (45 N. E. 269)'; *Busch v. Huston,* 75 Ill. 347. As between tenants in common, acts and words which will amount to an ouster must "not be of a doubtful character, but clear and unambiguous. The reason is that the possession itself is rightful, and does not imply adverse possession as would that of a stranger, so that the presumption of possession in recognition of the rights of cotenants must be overcome by acts and declarations clearly inconsistent therewith brought home to the cotenants." *Campau v. Campau,* 44 Mich. 31 (5 N. W. 1062; id., 45 Mich. 367, 8 N. W. 85). Any other rule would lead to gross injustice and enable a designing tenant in common to turn the kindness and forbearance of his cotenants into a means of depriving them of their equal interest in the common property without consideration.

2. SAME.

The burden of bringing himself within the law and establishing his claim to extinguish the title of his cotenants by clear and persuasive evidence is upon him, and in this respect we hold there is a distinct failure of proof. We agree with the conclusion announced by the trial court, and the decree from which appeal has been taken is in all respects *affirmed.*

3. SAME: burden of proof.

## SUPPLEMENTAL OPINION.

WEDNESDAY, APRIL 10, 1912.

PER CURIAM.—Appellant's petition for rehearing having been duly considered, the court finds no sufficient reason advanced for withdrawing the opinion heretofore announced and filed in this cause. It appears,

**4. PARTITION:** attorneys' fees.

however, that in making final disposition of the appeal the court overlooked appellant's exception to the ruling of the trial court allowing the plaintiff an attorney's fee, to be taxed with the costs of the case. The exception is well taken. We are of the opinion that under the rule applied in *Hawk v. Day,* 148 Iowa, 47, and other cases in which we have since followed that precedent, attorney's fees are not taxable, and the judgment of the district should therefore be so far modified as to set aside this allowance.

Subject to this modification, the opinion originally filed is reaffirmed, and the petition for rehearing is. therefore overruled.