FANNIE MOORE, Appellant, v. FLORENCE E. OLSON et al.,
Appellees.

No. 45216.

OCTOBER 15, 1940.

H. W. Hanson, for plaintiff, appellant.

Prichard & Prichard and R. E. Hanke, for defendants, appellees.

MITCHELL, J.—Fannie Moore commenced this action to quiet title to certain real estate located in the town of Moorhead, Monona county, Iowa, alleging that she is the absolute and unqualified owner in fee simple of the described real estate.

The defendant Florence E. Olson filed answer and claimed that her former husband, Mark D. Olson, was the owner of an undivided two-thirds interest in the said real estate as the only son of Hans J. Olson, who died intestate seized of said property and that she was entitled to the share of her husband by virtue of a decree of divorce handed down by the Polk county district court. Florence E. Olson also filed a cross-petition praying that title be quieted in her to an undivided two-thirds interest.

The trial court quieted title in the plaintiff to an undivided one-third interest in said real estate and in the defendant Florence E. Olson to the other two-thirds interest.

The plaintiff has appealed.

Hans J. Olson died intestate September 14, 1901, survived by the appellant, Fannie C. Moore, his widow, and by an only child, Mark D. Olson, who was then seventeen months old. Fannie C. Moore was the administratrix and listed the real estate referred to in the petition as belonging to her deceased husband at the time of his death.

184

■ There are two pieces of property, referred to as the "barber shop" and the "home place". It is the claim of the appellant that in the year 1919 she entered into an oral contract or agreement with her son, Mark D. Olson, in which he agreed that if she would turn over to him her interest in the "barber shop", he would turn over to her, his interest in the "home place", and that at that time they so agreed.

In 1938, Florence E. Olson, appellee, filed a petition for a divorce in the Polk county district court, in which she prayed for alimony against her husband, Mark D. Olson, and a writ of attachment was issued against his interest in the "home place". In that action Fannie C. Moore filed a petition of intervention in which she claimed to be the absolute owner of the "home place". In the divorce action the trial court granted the divorce and alimony in the sum of $1,000 and $25 per month, until the children reached the age of 16 years. The court also declared this judgment to be a lien upon whatever interest Mark D. Olson had in the real estate known as the "home place". The present action was commenced in November of 1938.

The law in this state covering an oral contract for the conveyance of real estate is well settled.

In the case of Myers v. Myers, 197 Iowa 1137, 1139, 198 N. W. 484, this court said:

"It is well settled that, to establish either a parol gift or contract of conveyance of land, the one so claiming must establish the gift or contract by clear, unequivocal, and definite testimony, and that the acts claimed to be done thereunder should be equally clear and definite, and referable exclusively to the contract or gift."

This case of Myers v. Myers was also quoted with approval in the case of Eggimann-Eckard v. Evans, 220 Iowa 762, 263 N. W. 328.

This rule has again been pronounced in the case of Fairall v. Arnold, 226 Iowa 977, 987, 285 N. W. 664, 669, as follows:

"Another principle, which must always be kept in mind, is that the 'part performance', the things done, or the matters claimed as consideration, must be unequivocally referable to the verbal contract. * * *

"This court early announced this principle in Williamson v. Williamson, 4 Iowa (Cole) 279, 281: 'If a party would take a case out of the statute of frauds, upon the ground of a part performance, it is indispensable that the parol contract, agreement or gift should be established by clear, unequivocal and definite testimony; and the acts claimed to be done thereunder, should be equally clear and definite, and referable exclusively to the said contract or gift.' "

In the recent case of Williams v. Harrison, 228 Iowa , 293 N. W. 41, decided June 18, 1940, this court has examined many of the authorities upon a similar situation and points out that the high degree of proof necessary to establish a claim such as the plaintiff makes, or claims of a kindred nature has been expressed by this court in varying language, as follows: "Clear and satisfactory proof", "clear and unequivocal", "clear, unequivocal, and definite", "direct, positive, express, and unambiguous", "clear, definite, and conclusive", "clear, substantial, and convincing", "clear, cogent, and convincing", "clear, satisfactory, and convincing".

With these rules of law in mind we turn to the record. The only evidence in regard to the alleged oral contract was that of the appellant; Mark D. Olson did not testify. It was claimed in the petition that appellant deeded the "barber shop" to her son, but at the trial a deed was offered in evidence, which was a joint deed, executed by the appellant and her son to the purchaser. The undisputed record also shows that some four years after the alleged oral contract, Mark D. Olson gave a mortgage upon the "home place".

It is also significant that the appellant made no claim that she had ever asked her son to execute a deed to her, and that her contention was never presented until the divorce action was started by the appellee against the said Mark D. Olson.

The appellant has failed to establish the contract by clear, unequivocal and definite testimony, and the lower court was right in so holding.

It is next claimed that appellant secured title through adverse possession.

The adverse possession is based upon the fact that the appellant collected the rents, paid the taxes, repairs and insurance.

It must be kept in mind, however, that the property in the case at bar was owned jointly by the appellant and her son, Mark D. Olson.

The facts in this case are very similar to those in Schoonmaker v. Schoonmaker, 154 Iowa 500, 503, 133 N. W. 741, 742, in which this court said:

"One can scarcely conceive of circumstances under which a husband can by adverse possession obtain title to the land of his wife with whom he maintains family relations. The same may be said as between parent and infant child. In this case appellant and his infant children were owners in common of the land. They lived upon it, we may assume, as the place of their common home until the children developed into maturity, and went out to make their several ways in the world after the manner of sons and daughters in general. If they left their father in sole possession, it was not an unnatural or unusual thing. He owned at least a third interest in the land, and could rightfully remain there. He was their father, and, if they were influenced by ordinary considerations of filial regard and respect, they could well consent, expressly or tacitly, to forego their right to demand partition until some future day, and this they could do without forfeiting their rights, unless their father should in some clear and unequivocal manner repudiate their right to a share of the property, and maintain exclusive and hostile possession in himself for at least ten years."

In the decree, the lower court held that the judgment rendered against Mark D. Olson in the divorce action amounted to more in money than the value of his undivided two-thirds interest in the "home place". The question of whether the lower court erred in regard to this part of the decree was not argued, and necessarily we do not pass upon it.

Considering the whole record as submitted to us, we can come to no other conclusion than that the lower court was right, and it necessarily follows that its decree must be and it is affirmed.—Affirmed.

HAMILTON, STIGER, SAGER, OLIVER, HALE, MILLER, and BLISS, JJ., concur.