T. A. LAWSE, trustee, appellant, v. HENRY GLAHA, also known as HENRY GLAHE, appellee.

No. 50504.

MAY 8, 1962.

Pollard, Lawse & Deitchler, of Fort Madison, for appellant.

Joseph L. Phelan, of Fort Madison, for appellee.

MOORE, J.—On March 9, 1955, plaintiff, as record title-holder, filed his petition asking that title to two lots in Block

1080 in the City of Fort Madison, Iowa, be quieted in him. Defendant answered in two divisions, the first denying plaintiff's claim of ownership and title and the second by counterclaim, asking that title be quieted in defendant. Both divisions assert defendant's adverse possession of the lots. An amendment to answer alleges laches on the part of plaintiff in asserting his claim.

The trial court found defendant, Henry Glahe, obtained title to the lots by adverse possession and a decree was entered quieting his title. From this decree the plaintiff appeals. We do not agree with the trial court.

At the time of his death in 1904 Ferdinand Glahe owned several lots in Block 1080 in Fort Madison and on one was the family home. In his will he provided certain lots go to his various sons after the death of his wife, Dina Glahe. The full title to the lots described in this action was inherited by George Glahe after the death of Dina in 1928. A short time after his father's death George Glahe left Iowa and became a resident of New Mexico. He and his wife, Annas, had two children, one having died in infancy, the other is now Margaret Burnadine Fish, also know as Mrs. Creston E. Fish. She is the sole beneficiary of the estates of George Glahe, who died March 10, 1945, and Annas Glahe, who died July 11, 1946, and was the equitable owner of the two lots in controversy. On March 7, 1955, together with her husband, Margaret Burnadine Fish conveyed the lots unto T. A. Lawse, as trustee, for Margaret Burnadine Fish. It is undisputed the record title was in the plaintiff at the time this case was submitted to the trial court.

Defendant, Henry Glahe, often referred to as Glaha, also inherited real estate from his father, Ferdinand Glaha, including the home property and a lot east of it. One of the lots in dispute is directly west and the other is southeast of the home property.

For many years prior to his death Henry lived in the home property with his mother and received money from his brother George. Henry estimated the amount to be from $10 to $15 per month. Mrs. Fish testified her father usually sent $25 per month. No such payments were made after the death of the mother in 1928.

Prior to 1929 and from 1929 to 1954, Henry Glahe paid the real-estate tax on the two lots together with the home property and other real estate in the estate. The County Treasurer listed it all as "Ferdinand Glaha estate", with "Henry Glahe" in parentheses after "estate". The total taxes paid on all the real estate listed as "Ferdinand Glaha estate" varied from $51 in 1929 to $69.84 in 1954. Paving assessments were levied against the real estate as a whole and paid by Henry Glahe during 1928, 1930, 1932, 1933 and 1934 and also during the years 1943, 1944, 1945 and 1946. There is no evidence of the separate amounts levied against the two lots. In 1954 the tax list was changed to show Mrs. Fish as owner of the two lots and the taxes thereafter were paid by plaintiff.

For many years Henry used the corner lot for gardening. He also received billboard space rental therefrom for several years. No improvements were made on the lots at any time.

After the death of her father and mother, Mrs. Fish considered the lots hers and did not object to her Uncle Henry's use of them for gardening. She testified she thought his use of the lots and the income would offset the taxes he paid.

On April 1, 1954, Mr. Joseph L. Phelan, as attorney for defendant, wrote a letter requesting Mrs. Fish to sign an enclosed quitclaim deed and stated in part:

"You being the sole heir of George Glaha are entitled to this property. Mr. Henry Glaha has paid the taxes on this property for almost fifty years and by virtue of this fact feels that he is entitled to it. I think the lot is probably worth between $500 and $1000.00."

On April 3, 1954, Mrs. Fish answered the letter wherein she stated her father had sent money to Henry and expressed her belief her father had been hopeful the various lots might be sold in a block and expressed her willingness to start paying the real-estate tax.

On April 12, 1954, Mr. Phelan again wrote Mrs. Fish wherein he expressed his opinion that Henry Glaha had a claim for the taxes paid and among other statements wrote:

"As you are the sole heir of George Glaha, these lots belong to you."

No reference is made in these letters to any claimed gift but in his counterclaim defendant alleged George Glaha in July 1900 conveyed the lots to defendant as a gift.

Helen Critchfield and defendant himself were the only witnesses for defendant. Helen Critchfield testified she had been Henry Glahe's housekeeper since 1945; and that she so acted for a year and two months starting in 1930; she was working for nothing and using her pension money for groceries for Henry and herself as he had been good enough to let her move into his house when she could not find one. Her testimony establishes a close friendship with defendant and shows her interest in the outcome of this case.

Mrs. Critchfield testified she overheard a conversation between George and Henry Glahe at the home place. It is as follows:

"I heard them talking about * * * Henry says to George, 'What are you going to do about these lots' and George said 'I told you I didn't want them. You can have them. Do as you please with them.' "

She further testified:

"Then Henry says, 'All right * * * then I will pay the taxes on them.' "

Her testimony was that this conversation took place in 1933 and George had visited also in 1931 and 1946. When advised of the date of George's death she changed the date of the last visitation to 1945.

Defendant on direct examination was asked the following questions by his attorney and made the following answers.

"Q. What has been your understanding with respect to the ownership of these lots since George left them? A. Never been a word said about it; never * * * I paid the taxes on the Ferdinand Glahe estate; that was all of it. I paid the taxes since dad died.

"Q. Do you recall a conversation which occurred here one time in the house between you and George where he told you the same thing; he didn't want the lots and you to take them? A. No, I don't know."

While still under direct examination, Henry Glahe testified:

"Q. Do you recall George being here in 1933 at the time of the World's Fair in Chicago? A. I don't know.

"Q. Pardon? A. I don't know whether—he might have been here. I can't remember.

"Q. Do you recall a conversation with him then in regard to the lots? A. No.

"Q. Pardon? A. I don't.

"Q. Do you recall one at any other time in regard to the lots? A. I don't remember of ever having any talk with him about it at all.

"Q. About the lots? A. About the lots. No."

On cross-examination he testified the last time he remembered seeing his brother George was in 1928.

Subject to the objection the witness was not competent to testify to a transaction with a person since deceased, under section 622.4, Iowa Code, defendant testified he received a letter from George in which George said he " 'didn't figure on coming back to live. If you want the darn lot pay for it, pay the paving.' "

No attempt was made to explain what became of the alleged letter from George nor to establish any date of its receipt.

The trial court in the findings of fact considered the evidence regarding the alleged letter and, without expressly waiving his objection, appellant's attorney for the purpose of argument refers to defendant's testimony last quoted. We think the evidence should be given little, if any, weight.

■ Since this is an equitable action it is triable de novo on appeal (rule 334, Rules of Civil Procedure) upon all issues of law and fact, whether passed upon by the trial court or not. Board of Supvrs. of Harrison County v. Board of Supvrs. of Crawford County, 234 Iowa 123, 124, 12 N.W.2d 259. It is our duty to sift the evidence and determine what the findings should be upon the evidence which was competent and proper. Geil v. Babb, 214 Iowa 263, 242 N.W. 34.

■ The trial court made no ruling on defendant's defense of laches. No ruling favorable to defendant could properly be made under the record. The doctrine of laches will be applied only where it would be inequitable to permit recovery or it is

clearly demanded in the interest of justice. Each case is governed chiefly by its own circumstances. Chadek v. Alberhasky, 253 Iowa 32, 39, 111 N.W.2d 297, 301; Atkin v. Westfall, 246 Iowa 822, 829, 69 N.W.2d 523, 527; Jennings v. Schmitz, 237 Iowa 580, 589, 20 N.W.2d 897, 903, and citations.

██ ██ One claiming title by adverse possession must establish all its constituent elements by clear and positive proof; it cannot be made out by inference. There are usually no equities in favor of one who claims property of another by adverse possession and his acts are to be strictly construed. The law presumes the possession of land is under the regular title. Meyers v. Canutt, 242 Iowa 692, 696, 46 N.W.2d 72, 75, 24 A. L. R.2d 1; Nichols v. Kirchner, 241 Iowa 99, 103, 40 N.W.2d 13, 16. See also 1 Am. Jur., Adverse Possession, sections 126, 238, 246; 2 C. J. S., Adverse Possession, sections 214(a), 215.

██ Defendant, Henry Glahe, to establish ownership by adverse possession was required to prove hostile, actual, open, exclusive and continuous possession, under claim of right or color of title, for at least ten years. Meyers v. Canutt and Nichols v. Kirchner, both supra; Creel v. Hammans, 234 Iowa 532, 535, 13 N.W.2d 305, 307, and citations.

██ If possession is originally acquired in subordination to the title of the true owner, there must be a disclaimer of the title from him, an actual hostile possession of which he has notice or which is so open and notorious as to raise a presumption of notice. Burch v. Wickliff, 209 Iowa 582, 589, 227 N.W. 133, 136; McClenahan v. Stevenson, 118 Iowa 106, 110, 91 N.W. 925, 926, and citations. In the recent case of Chadek v. Alberhasky, 253 Iowa 32, 37, 111 N.W.2d 297, 300, we said: "Possession, to be adverse, must be hostile; and when the element of hostility is not shown, possession can never ripen into title."

██ In attempting to prove an actual hostile possession under claim of right or color of title defendant offered evidence of a gift but his proof is insufficient. We must conclude he did not establish by clear and positive proof all the necessary elements of his claim of adverse possession.

In drawing this conclusion we are not unmindful of the testimony of Helen Critchfield on which defendant strongly re-

lies. Her testimony comes within the rule stated in Bell v. Pierschbacher, 245 Iowa 436, 444, 62 N.W.2d 784:

"We have repeatedly pointed out that evidence of claimed oral statements of a decedent should be closely scrutinized and cautiously received because it is not susceptible of denial and the witness may not have been capable or desirous of accurately relating what decedent may have said."

Prior to and during the trial plaintiff offered to do equity and we can see no reason why defendant should not be put in statu quo by reimbursement for the taxes and paving assessments paid by him on the two lots from 1929 to 1954, less billboard rental received, with interest.

The judgment of the trial court is reversed and the cause remanded with directions to quiet title in the plaintiff and determine the amount of defendant's expenditures for taxes and paving assessments from 1929 to 1954, less billboard rental received, with interest. The amount to be a lien on the two lots, giving plaintiff sixty days from the filing of this opinion to pay the sum so found. Costs will be taxed against defendant.—Reversed and remanded.

All JUSTICES concur.