Daisy SHIVES et al., Appellees and
Cross-Appellants,

v.

Dorcas NIEWOEHNER et al., Appellants
and Cross-Appellees.

No. 54790.

Supreme Court of Iowa.

Nov. 11, 1971.

Lee J. Farnsworth, Denison, for appellants.

L. V. Gilchrist, Denison, for appellees.

REYNOLDSON, Justice.

Partition action was brought by two sisters against a brother and sisters for the sale of a "family" farm. A defendant brother and sister, answering, denied any ownership in plaintiffs and by "cross-petition" (counterclaim) alleged ownership by adverse possession. From decree establishing shares in defendants and in only one plaintiff, defendants appeal and the other sister plaintiff cross-appeals. We affirm.

This Crawford county farm originally comprised about 101 acres. It was acquired in 1906 by D. E. Leitner, father of the principal parties to this action. The father died in 1907 survived by his wife Alice and six children. One child, Earl, died unmarried and without issue. The other five children were Roland, Daisy, Myrtle, Violet and Dorcas. They are all parties to this action as are the sisters' spouses, who will not be referred to again.

Roland was 15 and the eldest child when his father died. He assumed the role of male head of family and operated the farm. Mainly through his efforts the mortgage obligation was eventually lifted. His mother remarried, was soon widowed again, but continuously resided on the farm with Roland until her death in March 1939. She died unmarried, intestate; her five surviving children were her sole heirs. Various mortgages were executed by the mother and these litigants up to the year 1934. Roland was designated as the first mortgagor commencing in 1933. The final mortgage was released in 1943.

Roland, who never married, was in sole possession of this real estate at all times after his mother's death in 1939. He kept all the rents and profits and made substantial improvements. In 1942 he acquired the undivided one-fifth interest of Dorcas by quitclaim deed executed by her and her husband.

On April 30, 1943, Roland paid Daisy and her husband $500.00 and obtained a quitclaim deed purporting to convey "N ½

of SW ¼, Sec. 10–83–39, containing 101 acres more or less". Approximately 21 acres located in an adjoining quarter were not described, although the acres specified would comprise the entire farm. Daisy testified she intended to convey all her interest in the farm at that time.

The City of Denison condemned three acres of the farm for water works in 1961, naming Roland, Daisy, Myrtle and Violet as condemnees. Roland did not dispute ownership at that time and may even have distributed the separate award checks. In 1967 Roland reconveyed a one-fifth interest in the realty to Dorcas.

As initially aligned in this litigation Daisy, Violet and Myrtle were plaintiffs and Roland and Dorcas were defendants. Myrtle withdrew as plaintiff and was made a defendant. Petition alleged an undivided one-fifth interest in the realty in all five parties. Plaintiffs specifically alleged "* * * these plaintiffs believe that Roland S. Leitner stands ready to re-convey such one-fifth interest to Daisy E. Shives upon the payment by her to him of $500.00, the actual consideration for such conveyance, which sum she offers to pay." Defendants Roland and Dorcas denied any ownership in the plaintiffs and denied Roland was ready to reconvey to Daisy. By "cross-petition" they asserted plaintiffs had no right to the real estate because of Roland's "actual, exclusive, hostile, adverse, open and notorious possession" of the real estate for more than 25 years. Affirmative defenses of laches and estoppel were urged by defendants. In separate division Roland prayed for establishment of a lien in the amount of $19,921.00, that being the alleged value of farm improvements made by him. Plaintiffs by reply denied these allegations and further prayed for accounting from Roland for farm rents, issues and profits.

Trial court held the defense of adverse possession prevailed against plaintiff Daisy and denied application of it as to Violet. Ownership of the farm was established in Estate of Roland (who died before decree was entered), an undivided two-fifths share; and in Myrtle, Violet and Dorcas, an undivided one-fifth share each. Trial court ordered the farm sold and proceeds divided as indicated.

The appeal and cross-appeal raise basic issues which we treat in two divisions.

I. Was title based on Roland's adverse possession established as against Daisy and Violet?

Our case law governing adverse possession is well settled; its application to facts propagates the usual difficulties.

■ To constitute adverse possession to acquire title the possession must be actual, open, hostile, and under claim of right or color of title, continuous and exclusive for the statutory period of ten years. Section 614.1(5), Code 1971; Moffitt v. Future Assurance Associates, Inc., 258 Iowa 1160, 1170, 140 N.W.2d 108, 114 (1966); Burgess v. Leverett and Associates, 252 Iowa 31, 35, 105 N.W.2d 703, 705 (1960); Lynch v. Lynch, 239 Iowa 1245, 1254, 34 N.W.2d 485, 490 (1948); 3 Am.Jur.2d, Adverse Possession § 6, p. 86–87; 2 C.J.S. Adverse Possession § 8, pp. 520–521.

■ The possession of one tenant in common is presumed to be for the benefit of all, and will, in the absence of statute to the contrary, be regarded as the possession of all cotenants until rendered adverse by some act or declaration by him repudiating their interest in the property. Mack v. Linge, 254 Iowa 963, 967, 119 N.W.2d 897, 899 (1963); Moore v. Olson, 229 Iowa 182, 294 N.W. 305 (1940). As between cotenants, the statute does not commence to run until there has been an ouster, actual or constructive, by the occupying claimant. Gibson v. Gibson, 205 Iowa 1285, 1290, 217 N.W. 852, 855 (1928); Burns v. Byrne, 45 Iowa 285, 287 (1876). Constructive ouster may be shown by evidence of possessor's hostile intent coupled with knowledge or notice thereof brought home to his coten-

ants. Luney v. Rollins, 191 Iowa 969, 971, 183 N.W. 339, 340 (1921); Schoonmaker v. Schoonmaker, 154 Iowa 500, 503, 133 N.W. 741, 744 (1911). Such knowledge or notice may be shown by circumstantial evidence. Lynch v. Lynch, 239 Iowa 1245, 1255, 34 N.W.2d 485, 490 (1948); Arends v. Frerichs, 192 Iowa 285, 299, 184 N.W. 650, 656 (1921). Usually no equities exist in favor of one who claims property of another by adverse possession, and his acts are to be strictly construed. Simonsen v. Todd, 261 Iowa 485, 495, 154 N.W.2d 730, 736 (1967); Moffitt v. Future Assurance Associates, Inc., 258 Iowa 1160, 1170, 140 N.W.2d 108, 114 (1966). A family relationship among contending cotenants places a stronger burden of proof on those asserting adverse possession to show the necessary elements. Schoonmaker v. Schoonmaker, 154 Iowa 500, 503, 133 N.W. 741, 742 (1911).

 In this case it is undisputed cotenant Roland was in possession for the requisite time. The question is whether there was such constructive ouster of plaintiff cotenants Daisy and Violet as to start the statutory period. The answer under our law requires a determination of Roland's hostile intent, and the knowledge or notice of this intent to plaintiff sisters.

Relating to intent, Roland's payment of mortgage and taxes, effecting major improvements and repairs, leasing out and keeping the rents, issues and profits constitute admissible evidence but these facts are not necessarily determinative of the issue. Mack v. Linge, 254 Iowa 963, 119 N.W.2d 897 (1963); Lawse v. Glaha, 253 Iowa 1040, 114 N.W.2d 900 (1962); Meyers v. Canutt, 242 Iowa 692, 46 N.W.2d 72 (1951); Sagen v. Gudmanson, 164 Iowa 440, 145 N.W. 954 (1914). But see Lynch v. Lynch, 239 Iowa 1245, 34 N.W.2d 485 (1948); Arends v. Frerichs, 192 Iowa 285, 184 N.W. 650 (1921).

More directly on this issue and the issue of plaintiffs' knowledge was the testimony of plaintiffs on direct examination. Each testified Roland claimed to own the farm. Consternation of their attorney must have been matched by that of Roland's counsel when Roland testified on direct he knew it was not his but he wanted to own it some day. The latter, 78 years old and unable to reach the courtroom to testify, was obviously in his terminal illness. Trial court found he was confused and his testimony not probative. After studying the record, we agree. Roland died after submission of this case in district court and before the decree. The Executor of his estate was substituted as defendant.

Roland apparently made no protest when plaintiffs received a portion of the condemnation award from condemnor City of Denison. Violet testified she had over the years demanded rent and Roland frequently asked her to contribute toward the farm improvements. Daisy testified Roland told her, at a time when he was sick and about to go to the Veteran's hospital, if the farm was sold she would "get her share".

We are in accord with trial court in holding adverse possession was not proved as to Violet. We also agree the situation is different as to Daisy. The quitclaim deed she and her husband executed and delivered to Roland (for what was not an unreasonable consideration at that time) was intended to convey her full one-fifth interest in the farm, as she testified. After this conveyance in 1943 Roland's continuous possession of the premises would be presumed to be with hostile intent as to any ownership she might claim. His assertion of his ownership as to her and his failure to ask her for contribution toward improvements would naturally follow from his position as her grantee. Other equivocal acts are not sufficient to overcome this evidence of his intent and her knowledge. Trial court, hearing the testimony and observing the witnesses, held Roland's title by adverse possession precluded title in Daisy.

While our review is de novo (Rules 270, 334, Rules of Civil Procedure), we give

weight to the fact findings of the trial court, although we are not bound by them. Rule 344(f) (7), R.C.P.

The excellent annotation "Adverse Possession Between Cotenants" found in 82 A.L.R.2d 5, at page 32, states the general rule that possessor may hold the premises adversely to some of his cotenants while not holding adversely to the others.

■ Finally, and for clarity, some reference must be made to the ambivalent position of Myrtle, who withdrew as plaintiff and was made a defendant. By separate answer she denied all allegations of plaintiffs' petition and prayed its dismissal. She testified she did not feel she should be a defendant. She thought Roland should have the income from the farm but the land partly belonged to her. Myrtle joined Dorcas and the Executor of Roland's Estate in this appeal. Trial court wryly observed her sisters, whom Myrtle abandoned as plaintiff, had succeeded in establishing her apparent claim in spite of herself and decreed she was entitled to a one-fifth share. We concur in this equitable result.

No evidence was introduced on the issue of Roland's claimed lien for improvements nor on plaintiffs' claim for accounting. Counsel for all parties, on argument here, conceded these issues were abandoned. As trial court did not touch on these claims in his decree, we dismiss them with prejudice.

■ II. Were the claims of the plaintiffs barred by laches?

This defense is moot as to Daisy because Roland's title by adverse possession has been established as against her. See Burgess v. Leverett and Associates, 252 Iowa 31, 37, 105 N.W.2d 703, 706 (1960). The defense must be considered as to Violet's claim.

■ The doctrine of laches will be applied only where it would be inequitable to permit recovery or it is clearly demanded in the interest of justice. Each case is governed chiefly by its own circumstances. Lawse v. Glaha, 253 Iowa 1040, 1045–1046, 114 N.W.2d 900, 903 (1962); Chadek v. Alberhasky, 253 Iowa 32, 39, 111 N.W.2d 297, 301 (1961).

■ The general rule provides if complainant had no knowledge of the facts giving rise to the cause of action, the defense of laches does not lie. Complainant is not deemed to have been in default until there was something to apprise him of defendant's hostile conduct or invasion of his rights. Follett v. Meader, 155 Iowa 405, 409–410, 136 N.W. 216, 218 (1912); 27 Am.Jur.2d, Equity § 166, p. 709. In the case before us we have already held Violet had no notice of Roland's hostile intent as to her, assuming he had such intent. For the same reason she would not be guilty of laches under the above rule.

■ Another rule is applicable to deny this defense. Complainant is not guilty of laches where the situation of the defendant has not been materially changed by reason of complainant's delay in asserting his rights. Mere delay which does not work disadvantage or harm to others is not such laches. McKeon v. City of Council Bluffs, 206 Iowa 556, 561, 221 N.W. 351, 353 (1928); 27 Am.Jur.2d, Equity § 169, p. 715. In the case at bar, it was not proved Roland was harmed by Violet's delay in asserting her ownership. We cannot assume the improvements he made on the farm exceeded the income he derived from it; for many of the years it provided him a home.

We find the defense of laches not applicable. While defendants pleaded estoppel as an affirmative defense, that issue was not raised on appeal.

The finding and decree of the district court is approved and on both appeal and cross-appeal–

Affirmed.

All Justices concur.